RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
ANDREW WONG
Assistant Federal Public Defender
Nevada State Bar No. 14133
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax
Andrew_Wong@fd.org

Attorney for Erick Rangel-Ibarra

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERICK RANGEL-IBARRA<br><br>Defendant. | Case No. 2:18-cr-00292-JAD-DJA-1<br><br>**Defendant Erick Rangel-Ibarra Motion to Dismiss Superseding Criminal Indictment**<br><br>**(Argument Requested)** |

## I.   Introduction

The deficient superseding indictment (ECF No. 38), charging Defendant Erick Rangel-Ibarra with unlawful possession of a firearm in violation of 18 U.S.C. § 922(g) and § 924(a)(2), must be dismissed in light of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

On June 21, 2019, the Supreme Court held in *Rehaif* "that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at

2194. The "relevant category" in this case consists of those who (1) knew he or she was admitted to the United States under a nonimmigrant visa; *and* (2) knew he or she was prohibited from possessing a firearm at the time of possession. Concluding Congress would not "have expected defendants under § 922(g) and § 924(a)(2) to know their own statuses," the additional mens rea element *Rehaif* requires significantly affects what must be found by the grand jury, charged in the indictment, and proved by the government. 139 S. Ct. at 2197. The current superseding indictment does not meet the mens rea burden of proof that *Rehaif* held. As such, the indictment fails to state a claim, fails to give proper Sixth Amendment notice to Mr. Rangel-Ibarra, and must be dismissed.

## II. Argument

### A. Applicable Legal Standard

Prior to trial, a defendant may move to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). "A motion to dismiss is generally capable of determination before trial if it involves questions of law rather than fact." *United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017). "In determining whether an indictment charges a cognizable offense, [this Court is] bound by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment." *Id.* at 1047. "[I]f properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw . . . , but a fatal flaw requiring dismissal of the indictment." *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005) (alteration in original) (quoting *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999)).

2

### B. Purpose of and Requirements for a Legally Sufficient Indictment

An indictment alleging a criminal offense must be constitutionally valid. The Fifth Amendment guarantees a person may not "be held to answer for a felony except on the basis of facts which satisfied a grand jury that he should be charged." *United States v. Tsinhnahijinnie*, 112 F.3d 988, 992 (9th Cir. 1997); U.S. Const. amend. V. The Sixth Amendment, guarantees an "accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." *Russell v. United States*, 369 U.S. 749, 761 (1962); U.S. Const. amend. VI. Together, the Fifth and Sixth Amendments guarantee "substantial safeguards" to a criminal defendant, which an indictment is designed to provide. *Russell*, 369 U.S. at 763 (internal quotation marks omitted).

Federal Rule of Criminal Procedure 7 governs the nature and contents of an indictment, requiring "a plain, concise, and definite written statement of the essential facts constituting the offense charged." "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citation and internal quotation marks omitted). While statutory language may describe an offense generally, "it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Id.* at 117–18 (citation and internal quotation marks omitted).

Accordingly, the Ninth Circuit instructs that "an indictment must do more than simply repeat the language of the criminal statute." *United States v. O'Donnell*, 608 F.3d 546, 555 (9th Cir. 2010) (citing *Russell*, 369 U.S. at 764). "An indictment must be specific in its charges and necessary allegations cannot be left to inference . . . ." *Id.*

To evaluate the sufficiency of its allegations, an "indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *O'Donnell*, 608 F.3d at 555 (citation and internal quotation marks omitted). Ultimately, "[a]n indictment is sufficient . . . if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge." *United States v. Bernhardt*, 840 F.2d 1441, 1445 (9th Cir. 1988), *as amended* (citation omitted).

An indictment that fails to provide an accused with these safeguards is fatally deficient. Neither an amendment, except by the grand jury itself, *Stirone v. United States*, 361 U.S. 212, 215–16 (1960), nor a bill of particulars can save an invalid indictment. *Russell*, 369 U.S. at 770; *see also Kelly*, 874 F.3d at 1047 ("In determining whether an indictment charges a cognizable offense, [this Court is] bound by the four corners of the indictment . . . and cannot consider evidence that does not appear on the face of the indictment."). "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Russell*, 369 U.S. at 771. "To allow the

4

prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure.  For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Id.*   An indictment that fails to state an offense must therefore be dismissed.  *See Omer*, 395 F.3d at 1088.

### C. The indictment fails to state a cognizable offense as it fails to allege that Mr. Rangel-Ibarra knew his status prohibited him from possessing a firearm.

In *Rehaif,* the Supreme Court concluded that, in prosecutions under §§ 922(g) and 924(a)(2), the government must prove–at the time of the alleged firearm possession – of his status as a person barred from possession a firearm. *Rehaif*, 139 S. Ct. at 2200.  *Rehaif* recognized the interplay between §§ 922(g) and 924(a)(2).  *Id.* at 2194.  The text of § 922(g) prohibits unlawful firearm possession, and is modified by § 924(a)(2): '[w]hoever knowingly violates certain subsections of § 922(g), including § 922(g)(1), shall be subject to penalties of up to 10 years' imprisonment." *Id.* at 2195.  Reading these two statutes together, *Rehaif* holds the government must prove mens rea as to both status and possession: "the government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons *barred from possessing a firearm.*" *Id.* at 2200 (emphasis added).  This mens rea element, held essential by *Rehaif*, is missing from the indictment.

The indictment fails to allege Mr. Rangel-Ibarra knew of his prohibited status.  Instead, the indictment states only Mr. Rangel-Ibarra knew "he was an

5

alien admitted to the United States under a nonimmigrant visa." ECF No. 38, p. 1. Proving Mr. Rangel-Ibarra's alleged knowledge that he was an alien admitted to the United States under a nonimmigrant visa not satisfy the government's burden under *Rehaif*. The government must also prove Mr. Rangel-Ibarra knew this status barred him from possessing a firearm at the time of possession. Because the indictment fails to set forth this essential element, it fails to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v).

> **1. The indictment is defective because it fails to allege Mr. Rangel-Ibarra knew his status prohibited him from possessing a firearm as *Rehaif* requires.**

The Supreme Court's language in *Rehaif* requires the government to prove a defendant charged under § 922(g) and § 924(a)(2) knew both that he or she belonged to the relevant category *and* was prohibited from possessing a firearm at the time of possession. 139 S. Ct. at 2200. Although the Supreme Court "express[ed] no view . . . about what precisely the Government must prove to establish a defendant's knowledge of status," the plain language of their holding requires the defendant to know *both* his or her underlying status and that status prohibited firearm possession. *Id.* "We conclude that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."

In interpreting the phrases "relevant category of persons" and "barred from possessing a firearm" *Rehaif* explained the Court "normally read[s] the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime." 139 S. Ct. at 2195 (citing *Flores-Figueroa v. United States*, 556 U.S.

6

646 (2009)). The natural reading of this statutory language indicates the Supreme Court intended for future courts to read and interpret *Rehaif* in the same manner. Thus, "he knew" applies to both clauses, necessitating that the defendant know both that he was part of the relevant category of persons and was barred from possessing a firearm. The Court made this holding clear by expressly providing a defendant must know he or she is barred from possessing a firearm, applying the mens rea of "vicious will" and repeatedly using the term "status element."

The Supreme Court predicated *Rehaif* on the necessity of requiring a "vicious will" to convict someone of a crime. 139 S. Ct. at 2196 (citing 4 W. Blackstone, Commentaries on the Laws of England 21 (1769)). *Rehaif* emphasized the fundamental importance of "separate[ing] those who understand the wrongful nature of their act from those who do not." *Id.* (citing *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994)).

Convicting a defendant based on mere knowledge of his or her criminal history, or in this instance, precise immigration status, does not ensure conviction of only those actors with a "vicious will." Rather, conviction must require a defendant to know "the wrongful nature of their act," meaning the significance of the relevant category to which he or she belongs. Knowledge of one's underlying status does not itself confer culpability. Rather, to confer culpability in the context of unlawful possession, the defendant must actually know he or she is not allowed to possess a firearm, an otherwise constitutionally protected right. The defendant must know his or her prohibited status bars firearm possession in order to attribute to that defendant the requisite "vicious will." Thus, for

conviction under §§ 922(g)(5)(b) and 924(a)(2), a defendant must know his or her immigration status, and his status prohibited firearm possession at the time of firearm possession alleged in the indictment.  Otherwise, "the defendant may well lack the intent needed to make his behavior wrongful." *Id.* at 2197.

Moreover, the Court referred to the first element in § 922(g) and § 924(a)(2) cases as the "status element." *Id.* at 2195–96.  The word status is defined as "[a] person's legal condition, whether personal or proprietary, the sum total of a person's legal rights, duties, liabilities, and other legal relations, or any particular group of them separately considered."  Status, *Black's Law Dictionary* (11th ed. 2019).  Status refers to the present, given that status refers to one's "legal condition", and the consequences stemming from that condition, since it encompasses one's "legal rights, duties liabilities, and other legal relations."  Thus, in order to satisfy the Supreme Court's choice of the term "status element," a defendant must know the relevant legal status and know that the relevant consequences of that legal status, specifically the prohibition against firearm possession.

### 2. The indictment fails to state an offense in light of *Rehaif.*

By omitting the knowledge of prohibited status element, the indictment fails to state a cognizable violation of § 922(g) and § 924(a)(2).  An indictment fails to state an offense when it fails to allege an essential element of the crime. *See United States v. Chesney*, 10 F.3d 641, 643 (9th Cir. 1993) ("An indictment's failure to state an element of the charged offense is a fundamental defect that may be challenged at any stage of a criminal proceeding."), *United States v.*

8

*Sutton*, 961 F.2d 476, 478–79 (4th Cir. 1992) (same). As set forth herein, *Rehaif* made clear that knowledge of prohibited status is an essential element for conviction under § 922(g) and § 924(a)(2). The indictment's failure to allege that Mr. Rangel-Ibarra both knew he was admitted to the United States under a nonimmigrant visa and has a status that prohibited him from possessing a firearm is a "fundamental defect," rendering the indictment fatally deficient. *United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir. 1976).

In order to give notice to the defendant of all the essential elements of § 922(g) and § 924(a)(2), the indictment needs allege that the defendant had the requisite intent. As argued above, the requisite intent under § 922(g) and § 924(a)(2) is that the defendant knew (1) he or she was admitted to the United States under a nonimmigrant visa; and (2) he or she was barred from possessing a firearm. The indictment must allege the above, or, in the alternative, follow the Supreme Court's language in *Rehaif* and allege that the defendant knew "he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. Otherwise, the indictment alleges an incomplete mens rea, fails to state an offense, and fails to give notice to Mr. Rangel-Ibarra. Because the indictment fails to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v), it must be dismissed.

### D. The deficient indictment violates Mr. Rangel-Ibarra's right to indictment by a grand jury.

Criminal liability under § 922(g) and § 924(a)(2) requires a specific knowledge requirement. Yet, without the essential mens rea elements set out in the indictment, Mr. Rangel-Ibarra has no assurance the government presented evidence on Mr. Rangel-Ibarra's knowledge of whether his status prohibited him

9

from possessing a firearm before the grand jury. ECF No. 38, p. 1. Moreover, grand jurors, like petit jurors, presumably follow the instructions given to them. *Cf. Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (applying "the almost invariable assumption of the law that jurors follow their instructions"). Thus, there is no basis to presume the grand jury was instructed on scienter differently than as set forth in the indictment.

According to the four corners of the indictment, the grand jurors who returned the indictment against Mr. Rangel-Ibarra were fundamentally mis-instructed on the elements of a violation of 18 U.S.C. § 922(g) and § 924(a)(2) and misled about the requirements for finding probable cause. The grand jurors were improperly led to believe the government had no burden of proof as to whether Mr. Ibarra knew his status prohibited him from possessing a firearm. This instructional omission fundamentally distorted the grand jury's analysis of probable cause and eviscerated Mr. Rangel-Ibarra's Fifth and Sixth Amendment guarantees ordinarily safeguarded by a sufficient indictment. As a result, the indictment must be dismissed *See, e.g.,* U*nited States v. Peralta,* 763 F. Supp. 14, 16 (S.D.N.Y. 1991) (dismissal of indictment for erroneous constructive possession instruction and inaccurate testimony) and *United States v. Stevens*, 771 F. Supp. 2d 556, 568 (D. Md. 2011) (dismissal of indictment for erroneous instruction on affirmative defense)n on affirmative defense); *cf. United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979) (unintentional acts may "cause improper influence and usurpation of the grand jury's role").

*Alternatively*, if the Court requires additional information to determine if the grand jury found probable cause on Mr. Rangel-Ibarra's knowledge of his prohibitive status, Mr. Rangel-Ibarra requests production of the grand jury

transcripts. Under Fed. R. Crim. P. 6(e)(3)(E)(i) and (ii), a grand jury transcript may be disclosed "preliminarily to or in connection with a judicial proceeding," or "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Where grounds appear for doing so, the court's decision to release a grand jury transcript is "infused with substantial discretion." *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979).

Before disclosure may occur, the defendant must demonstrate a "particularized need." *Id.* Such a showing must satisfy the following three-part test: (1) the material sought is "needed to avoid a possible injustice in another judicial proceeding," (2) "the need for disclosure is greater than the need for continued secrecy," and (3) the "request is structured to cover only material so needed" *Id.* at 222; *see also United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991) (applying three-part standard). This test is "a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others." *United States v. John Doe, Inc. I*, 481 U.S. 102, 112 (1987).

### a.  Disclosure is required to avoid an injustice.

The indictment was true billed without instruction on Mr. Rangel-Ibarra's knowledge of his prohibited status, a requirement under *Rehaif*. Presumably, therefore, no evidence was presented to the grand jury regarding the absent mens rea requirement, and the grand jury returned an indictment against Mr. Rangel-Ibarra without any inquiry into or finding of probable cause on this essential element. Accordingly, the indictment must be dismissed under Fed. R. Crim. P. 12(b)(3)(A)(v).

11

Instructional errors before the grand jury, intentional or unintentional, warrant dismissal. *See, e.g.,* U*nited States v. Peralta,* 763 F. Supp. 14, 16 (S.D.N.Y. 1991) (dismissal of indictment for erroneous constructive possession instruction and inaccurate testimony); *Stevens*, 771 F. Supp. 2d at 568 (dismissing indictment for erroneous instruction on affirmative defense); *Samango*, 607 F.2d at 882 (holding unintentional acts may "cause improper influence and usurpation of the grand jury's role"). As a corollary matter, instructional errors also warrant disclosure of grand jury transcripts. *See* Fed. R. Crim. P. 6(e)(3)(E)(i), (ii); *United States v. Twersky*, No. S2 92 CR. 1082 (SWK), 1994 WL 319367, at *5 (S.D.N.Y. June 29, 1994). To the extent this Court requires a more developed record to rule on this motion, the grand jury transcripts should be produced to the Court and counsel.

### b.     The interest in secrecy is minimal.

The indictment was returned on December 12, 2019. ECF No. 273. Presumably, the grand jury has now concluded its activities, and no need for continued secrecy remains.

Once the grand jury finishes its activities, the interest in grand jury secrecy is "reduced." *Douglas Oil Co. of California*, 441 U.S. at 223. This is a sliding scale analysis: "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Id.* Those considerations are five-fold, but only two are relevant once the grand jury completes its work: (1) "the need to encourage free disclosure by witnesses before the grand jury", and (2) "the need to protect those exonerated by the grand jury from disclosure of the fact that they

were under investigation." *Ballas v. United States* (*In re Grand Jury Proceedings*), 62 F.3d 1175, 1180 n.2 (9th Cir. 1995).

To the extent the Court requires a fuller record of the grand jury proceedings to rule on this motion, this can only be accommodated through disclosure of the grand jury transcripts. There is thus a compelling need for disclosure. Moreover, no countervailing need for continued secrecy exists, since the grand jury has completed its investigation. And, whatever residual need there may be for continued secrecy can be managed with a protective order. *See Douglas Oil Co. of California*, 441 U.S. at 223 ("If disclosure is ordered, the court may include protective limitations on the use of the disclosed material.").

### c.   Scope of the Request

This request encompasses the evidentiary record (transcripts and exhibits) and instructions presented to the grand jury that returned the indictment. A particularized need has been shown, and "[w]hen the defense shows a particularized need for grand jury transcripts that outweighs the need for secrecy, the trial judge's function is reduced to eliminating only extraneous material or issuing protective orders in unusual situations." *See Plummer*, 941 F.2d at 806.

13

## II. CONCLUSION

The superseding indictment must be dismissed because intervening Supreme Court law requires a scienter element as to prohibited status, which the indictment fails to allege. Alternatively, if the Court requires additional information from the grand jury process to adjudicate this motion, Mr. Rangel-Ibarra asks that the grand jury transcripts and exhibits be produced to the defense and the Court for review.

DATED: February 11, 2020.

                            RENE L. VALLADARES
                            Federal Public Defender

                     By: */s/ Andrew Wong*
                            ANDREW WONG
                            Assistant Federal Public Defender

## CERTIFICATE OF ELECTRONIC SERVICE

The undersigned hereby certifies that he is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on February 11, 2020, he served an electronic copy of the above and foregoing **Defendant Erick Rangel-Ibarra Motion to Dismiss Superseding Criminal Indictment (Argument Requested)** by electronic service (ECF) to the person named below:

NICHOLAS A. TRUTANICH
United States Attorney
LINDA MOTT
Assistant United States Attorney
501 Las Vegas Blvd. So.
Suite 1100
Las Vegas, NV 89101

*/s/ Brandon Thomas*
Employee of the Federal Public Defender